## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                    **Case No.  3:08cr39/MCR/CJK**
                                             **3:09cv566/MCR/CJK**

**CHRISTOPHER MICHAEL HUTCHINS**,
          **Defendant**.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence (doc. 135), filed pursuant to 28 U.S.C. § 2255.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636, and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B).  Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

### BACKGROUND AND PROCEDURAL HISTORY[1]

The defendant, Christopher Michael Hutchins ("Hutchins"), and co-defendants Abraham David Saftchick ("Saftchick") and Howard D. Fisher ("Fisher"), were charged with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846. (Doc. 3, pp. 1-2).  Defendant entered a plea of guilty to that charge (doc. 73), and the district court sentenced him to seventy-two months' imprisonment.  (Doc. 132, p. 67).

Coconspirator Justin Mikhael ("Mikhael") became the subject of a criminal

---

[1] References to the presentence investigation report will be by "PSR" followed by the paragraph number.

investigation by the Florida Department of Law Enforcement, the Okaloosa County, Florida, Drug Task Force, and the Drug Enforcement Administration. (PSR ¶¶ 10-11). On November 14, 2006, a surveillance camera was installed near Mikhael's residence to monitor and record activity. (PSR ¶ 18). On March 15, 2007, this camera observed defendant arriving at Mikhael's residence in a rental van and departing with a small bag. (PSR ¶ 35). Mikhael later advised law enforcement that, on this occasion, defendant had picked up $20,000 that Mikhael owed Hutchins for the purchase of marijuana. (PSR ¶ 35). On April 5, 2007, Mikhael's residence was searched and large quantities of marijuana, large sums of U.S. currency, and several firearms were found. (Doc. 145-3, pp. 6-8).[2] Mikhael subsequently informed officers that he utilized the firearms for protection after being shot during a drug transaction. (Doc. 145-3, p. 9). Mikhael was arrested, entered a guilty plea, and agreed to cooperate with the government. (Doc. 118-2, pp. 3-4; Doc. 145-3, p. 8).

Mikhael identified Saftchick as one of his primary sources of marijuana and Hutchins as Saftchick's partner. (PSR ¶ 12). Mikhael stated that he met Hutchins about halfway through his dealings with Saftchick. (PSR ¶ 15). Defendant telephoned Mikhael, told him Saftchick was in a drug rehabilitation program, and offered to continue providing him with marijuana. (PSR ¶ 15). When Mikhael ordered marijuana from Saftchick or Hutchins, Howard Fisher delivered it. (PSR ¶ 14). Mikhael explained that he purchased twenty pounds of marijuana from Hutchins on approximately seven occasions. (PSR ¶ 16).

On April 15, 2008, a grand jury returned an indictment charging defendant, Saftchick, and Fisher with conspiracy to distribute 100 kilograms or more of

---

[2] Mikhael's name is spelled as "McHale" in Howard Fisher's sentencing hearing transcript.

marijuana. (Doc. 3, pp. 1-2). A warrant was issued for defendant's arrest (doc. 10), and he was arrested on May 23, 2008, in Fort Lauderdale, Florida. (Doc. 51). State and federal law enforcement officials also executed a warrant to search defendant's residence in Davie, Florida. (PSR ¶ 46). This search led to the seizure of $32,000 and several firearms. (PSR ¶ 46). On July 29, 2008, defendant pleaded guilty to the sole count in the indictment. (Doc. 73; PSR ¶ 8). Defendant stipulated to the factual basis proffered by the government, defining the parameters of the conspiracy:

> Between approximately January of 2005 and May of 2007, the defendant participated in a conspiracy or agreement with other persons, including co-defendants Abraham Saftchick and Howard Fisher to acquire distribution quantities of marijuana and provide the marijuana to others. Justin Mikhael made arrangements with the defendant and co-defendant Abraham Saftchick for distribution quantities of marijuana to be delivered to Mikhael's residence in Destin, Florida. The defendant and co-defendant Abraham Saftchick would make arrangements for co-defendant Howard Fisher to deliver distribution quantities of marijuana to Justin Mikhael at his residence in the Destin, Florida area. The marijuana provided by the defendant and delivered by Fisher would then be stored at Mikhael's residence until Mikhael would, in turn, distribute the marijuana to others in the Northern District of Florida. The amount of marijuana acquired and distributed in this manner by the defendant over the course of the conspiracy exceeded 100 kilograms.

(Doc. 74-2).

Although the defendant did not enter into a formal plea and cooperation agreement with the government (doc. 116, pp. 1-2; doc. 118, p. 3), he did engage in a proffer interview with law enforcement in an effort to encourage leniency at sentencing. (Doc. 110, p. 6; Doc. 116-2, pp. 1-3). During this interview, conducted on August 20, 2008, defendant described the operation of the conspiracy and the individuals involved. (Doc. 118, p. 3; Doc. 132, pp. 16-17).

The veracity of Hutchins's interview responses came into question when Saftchick, in speaking with law enforcement, made statements tending to contradict those of the defendant.  (Doc. 132, p. 22).  The conflict between the two sets of statements concerned the role of defendant's father in the conspiracy; Hutchins denied that his father was involved, whereas Saftchick identified Hutchins's father as a party to the drug trafficking conspiracy.  (Doc. 116, p. 3).  To resolve this conflict, the prosecutor requested that defendant undergo a polygraph examination. (Doc. 135, p. 14).  Michael Dutko ("Dutko"), defendant's attorney, did not feel it would be in Hutchins's best interests to submit to the polygraph without establishing conditions to ensure the exam's fairness.  (Doc. 135, p. 18).  The prosecutor did not agree to Dutko's proposed conditions and the polygraph was never conducted.  (Doc. 132, pp. 27-28).

A presentence investigation report was prepared to aid the court in determining Hutchins's sentence.  The report recommended that all three defendants be held responsible for the firearms possessed by coconspirator Justin Mikhael during the conspiracy and seized at his residence.  (PSR ¶¶ 53, 60).

After receiving the presentence investigation report, Dutko objected to its recommendation that Hutchins be held responsible for Mikhael's firearm possession. (PSR ¶ 125).  Defense counsel contended that "Hutchins can make a credible argument that Mikhael's possession of the firearms was not reasonably foreseeable to Hutchins, and that it was clearly improbable that Mikhael's possession was connected to the conspiracy."  (PSR ¶ 125).  In preparation for the sentencing hearing, Dutko contacted a federal sentencing specialist, Michael H. Berg ("Berg"), to solicit advice on arguing against the proposed firearm enhancement to the court.

(Doc. 135, pp. 7-8).  Dutko also employed Marc Fagelson ("Fagelson"), who served for twenty-five years as an Assistant U.S. Attorney in the Southern District of Florida, to assist him in preparing for the sentencing phase.  (Doc. 145-2, pp. 1-3).

At defendant's sentencing hearing, counsel continued to object to the enhancement for possession of a firearm by coconspirator Justin Mikhael.  (Doc. 132, pp. 6-12).  The court, however, overruled the objection and adopted the same position it had in the sentencing hearings of co-defendants Saftchick and Fisher, finding that possession of a firearm by a coconspirator in a large drug trafficking conspiracy was reasonably foreseeable.  (Doc. 132, pp. 11-12).  In consideration of this finding, the court enhanced defendant's base offense level by two levels.  (Doc. 132, pp. 12-13).  Although the government did not file a substantial assistance motion pursuant to U.S. SENTENCING GUIDELINES MANUAL § 5K1.1, Dutko argued successfully that defendant's cooperation entitled him to a downward departure from the prescribed guidelines range.  (Doc. 132, p. 62).  Accordingly, the court sentenced Hutchins to seventy-two months' imprisonment, below the guideline range of seventy-eight to ninety-seven months.  (Doc. 132, pp. 13, 70).

## DEFENDANT'S CLAIMS

Pursuant to 28 U.S.C. § 2255, defendant timely filed the instant motion to vacate, set aside, or correct sentence (doc. 135), asserting two grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States.  The government filed a response in opposition (doc. 145), and the defendant filed a reply.  (Doc. 150).  Hutchins contends defense counsel rendered ineffective assistance by failing to:  (1) object to the court's failure to determine that defendant agreed to Mikhael and Saftchick's firearm possession; and (2) follow

defendant's instructions to accept the prosecutor's request to submit to a polygraph examination (regardless of the conditions), and failing to have defendant enter into a written plea and cooperation agreement so as to "protect [his] interest[s]."[3]  (Doc. 135, p. 3).

<u>ANALYSIS</u>

As a preliminary matter, the court notes certain general rules applicable in § 2255 proceedings following direct appeals, as well as the distinction between review under § 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law."  *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (*citing McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *See*

---

[3] Although the motion to vacate mentions both Mikhael and Saftchick's firearm possession (doc. 135, p. 3), defendant was held accountable only for Mikhael's possession.  (PSR ¶ 126).

*United States v. Addonizio*, 442 U.S. 178, 184 (1979). Relief under § 2255 should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

Defendant contends in ground one that counsel provided ineffective assistance by failing to object to the two-level firearm enhancement on the basis that Hutchins did not agree to coconspirator Mikhael's firearm possession. (Doc. 135, p. 3). An enhancement for coconspirator firearm possession, however, may be applied to a

convicted defendant if the government proves by a preponderance of the evidence: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, *and* (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999) (emphasis in original). "Once the government shows that a firearm is present at the site of the charged conduct, 'the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.'" *United States v. Westry*, 524 F.3d 1198, 1221 (11th Cir. 2008) (*quoting United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005)).

Here, defense counsel objected to the firearm enhancement, both after receiving the presentence investigation report and at the sentencing hearing, arguing that Mikhael's possession of the firearms was not reasonably foreseeable and that it was clearly improbable that the possession was connected to the conspiracy. (PSR ¶ 125; Doc. 132, pp. 6-12). That Dutko did not object on the basis that defendant did not agree to Mikhael's possession of the firearm is not material—in the Eleventh Circuit, actual knowledge of, or agreement to, possession of the firearm is not a prerequisite to the calculus of enhancements for coconspirator firearm possession. *See United States v. Baker*, 432 F.3d 1189, 1235 (11th Cir. 2005) ("Co-conspirators are liable for the reasonably foreseeable acts of another co-conspirator taken in the course of and in furtherance of the unlawful agreement, regardless of whether they had actual knowledge of those acts . . . ."). The agreement of consequence is the agreement to participate in the marijuana distribution conspiracy, to which the defendant admitted in his factual basis for the guilty plea. (Doc. 74-2). The only possible objections,

both of which Dutko raised (PSR ¶ 125), spoke to whether the possession was in furtherance of the conspiracy and whether it was reasonably foreseeable to the defendant. *See Gallo*, 195 F.3d at 1284. Mikhael admitted that he acquired the firearms for protection after being shot during a drug transaction. (Doc. 145-3, pp. 8-10). Based on this admission, and the fact that Hutchins had visited Mikhael's residence, a known storage and distribution site for the conspiracy's marijuana, the court found the possession was in furtherance of the conspiracy and reasonably foreseeable to the defendant. Accordingly, the court found the two-level enhancement for coconspirator firearm possession to be appropriate.[4] (Doc. 132, pp. 11-12); *see United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (holding defendant liable for coconspirators' firearm possession and observing, "It is not clearly improbable that [drug dealing coconspirators] felt the need to protect their inventory and proceeds as well as themselves while they were engaging in that high risk activity.").

Notably, defense counsel made a diligent and thorough inquiry as to how to proceed in his objections to the firearm enhancement. Dutko consulted with Messrs. Fagelson (doc. 145-2, pp. 4-5) and Berg (doc. 135, pp. 7-8), two attorneys with considerable experience in applying the sentencing guidelines. In light of this due diligence, and the objections Dutko raised on more compelling legal grounds, counsel's conduct was not unreasonable. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984) ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." ). In effect, defendant does not so much

---

[4] The sentencing court adopted the factual findings made at the sentencing hearings of co-defendants Saftchick and Fisher regarding the firearm enhancement. (Doc. 132, pp. 11-12). A transcript of Fisher's sentencing hearing is available as doc. 145-3.

take issue with counsel's performance as he does with the sentencing court's resolution—on the facts—of the firearm enhancement issue; nonetheless, counsel does not render ineffective assistance merely because the court declines to credit a particular objection. *See Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.").

Moreover, defendant cannot show defense counsel's actions were prejudicial. Hutchins's co-defendants, David Saftchick and Howard Fisher, received the same firearm sentence enhancement.  In each instance, counsel for the defendant objected to the enhancement, arguing that his client lacked awareness of the coconspirator's firearm possession. (Doc. 145-3, pp. 22-24; Doc. 145-4, pp. 2-3).  In each instance, the court decided the enhancement was appropriate nevertheless.   At Fisher's sentencing hearing, the court noted that "in the Eleventh Circuit[,] the Government does not have to show that the Defendant had actual knowledge or was even aware that the coconspirator possessed the firearm."  (Doc. 145-3, p. 23).   Similarly, Saftchick appealed his firearm sentence enhancement to the U.S. Court of Appeals for the Eleventh Circuit, arguing he "should not be held responsible for the firearms Mikhael possessed" because "Mikhael was merely a buyer, not a co-conspirator" and "Saftchick was unaware that Mikhael possessed firearms." (Doc. 145-4, p. 3).  In a decision dated June 30, 2009, the Eleventh Circuit affirmed the application of the enhancement, holding that Mikhael's residence was a storage and distribution point for the conspiracy, Mikhael used the firearms for protection, and Saftchick had not shown that a connection between the firearms and the conspiracy was clearly improbable. (Doc. 145-4, p. 6).  The court noted that Saftchick's actual knowledge

of the firearms was irrelevant to application of the enhancement.  (Doc. 145-4, p. 6).
Although rendered after Hutchins's sentencing hearing, this appellate decision was
based on the same factual circumstances obtaining in his case.

 The theory underlying the objections and arguments relied on by Fisher and
Saftchick—lack of knowledge of the coconspirator's firearm possession—does not
differ in any material respect from the one Hutchins now urges his attorney should
have raised at the sentencing hearing.  The experiences of Hutchins's co-defendants
in opposing the firearm enhancement counsel that an such an objection as defendant
now advocates would have been futile.  Significantly, the Constitution does not
require effective counsel to raise legal arguments of dubious merit.  *See Brownlee v.
Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not
ineffective for failing to raise these issues because they clearly lack merit"); *Meeks
v. Moore*, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion that
counsel has no duty to bring forth non-meritorious motions); *Jackson v. Herring*, 42
F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims
which he reasonably believes to be of questionable merit."); *United States v. Winfield*,
960 F.2d 970, 974 (11th Cir. 1992) (applying *Strickland* and holding that "a lawyer's
failure to preserve a meritless issue plainly cannot prejudice a client"); *Lancaster v.
Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable
counsel's decision not to file what he believed to be a meritless motion); *Ladd v.
Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it
was clearly not ineffective for counsel not to pursue them.").  For these reasons,
Dutko's failure to object to the enhancement on the basis of Hutchins's claimed lack
of agreement to Mikhael's firearm possession worked no prejudice to the defendant.

Consequently, relief is unavailable on ground one.

In ground two, defendant contends counsel rendered ineffective assistance by failing to assure the prosecutor that Hutchins would submit to a polygraph examination regardless of the conditions. (Doc. 135, p. 3). Defendant also asserts claims of ineffective assistance in this ground on the basis of counsel's alleged failures to convey to the government Hutchins's knowledge of the conspiracy and to negotiate a plea and cooperation agreement. (Doc. 135, p. 3).

"The burden of persuasion is on a [defendant] to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In evaluating counsel's strategic decisions, the reviewing court thus considers "whether there was any reasonable justification for the attorney's conduct." *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) (*citing Chandler*, 218 F.3d at 1315). Here, Dutko declined to have Hutchins take the polygraph examination, grounding this decision in several factors. Based on his experiences as a police detective, prosecutor, and defense attorney, Dutko recognized that polygraph examinations can be "subject to great abuse if not handled carefully." (Doc. 132, pp. 23-24). Accordingly, counsel advocated that administration of the exam be subject to certain conditions calculated to ensure its fairness. (Doc. 135, p. 18). When Dutko learned, however, that the prosecutor, irrespective of the polygraph's outcome, did not intend to file a substantial assistance motion on defendant's behalf, he determined that taking the exam would not be in his client's best interests. (Doc. 145-1, pp. 6-7). Perhaps more importantly, Dutko and Fagelson each indicated in a sworn affidavit that the ultimate decision to forego the polygraph examination was one of defendant's own making.

(Doc. 145-1, p. 7; Doc. 145-2, pp. 6-7).  Tellingly, when given an opportunity to speak at his sentencing hearing, defendant never voiced displeasure with his attorney's recommendation to refrain from the polygraph examination.  (Doc. 132).  Having failed to show that this recommendation was not reasonably justified by strategic concerns, defendant has not made a showing that counsel performed deficiently in this regard.  *See Newland*, 527 F.3d at 1184.

On the question of prejudice, the evidence of record suggests that successful completion of the polygraph exam would not have yielded a more favorable sentence.  As noted above, Dutko explained in his sworn affidavit that he formed an opinion as to the relative value of the polygraph exam only after learning that, regardless of defendant's performance, the government would not recommend a § 5K1.1 certification (for substantial assistance) at sentencing.  (Doc. 145-1, pp. 6-7).  Email correspondence between defense counsel and the prosecutor confirms that successful performance of the polygraph exam would not have resulted in a substantial assistance motion.  (Doc. 135, pp. 10-11).  At the sentencing hearing, the prosecutor, referring to defendant's degree of cooperation, placed in context the value of the information Hutchins imparted about the greater conspiracy:  "[S]omebody in the position of manager, leader, or organizer was [not] going to be awarded a [substantial assistance motion] that provided information that led or contributed to the indictment or arrest and conviction of two mules."  (Doc. 132, p. 45).  Because defendant fails even to articulate what conceivably he stood to gain from subjecting himself to the polygraph, no prejudice is apparent.  *See Strickland v. Washington*, 466 U.S. 668, 693 (1984) (requiring of defendant attempting to demonstrate prejudice *more* than a mere showing that "the errors [alleged] had some conceivable effect on the outcome of the

proceeding"). This claim of ineffective assistance of counsel thus offers no basis for relief.

Hutchins also claims ineffective assistance on the basis of counsel's alleged "[failure] to learn from me the full extent of my information and [failure] to offer it to the government to meet their demands as to what was substantial cooperation." (Doc. 150, p. 3). At the sentencing hearing, however, Dutko described how he had cautioned defendant against withholding information concerning Maria Saftchick, another coconspirator:

> We discussed that for weeks, and it was explained to Mr. Hutchins that the one way you could violate any sort of cooperation agreement, whether it was a written cooperation agreement or a Rule 11 proffer or an oral agreement, one way you can surely violate that is to withhold information. He eventually agreed.

(Doc. 132, pp. 17-18). Dutko, who encouraged defendant to be forthcoming in his interactions with law enforcement, can hardly be blamed for Hutchins's decision to withhold information of criminal significance during the proffer interview. Because defendant has not demonstrated performance falling beyond the wide range of reasonable professional assistance, this claim of ineffective assistance of counsel must fail. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Finally, defendant submits that counsel rendered ineffective assistance by failing to negotiate and conclude a formal plea and cooperation agreement with the U.S. Attorney's office.[5]  (Doc. 135, p. 3).  Though not conclusive, the bare record

---

[5] Although Dutko at times indicated that defendant had entered into a cooperation agreement (doc. 114, pp. 1-2; doc. 135, p. 15; doc. 145-1, p. 6), the record confirms that Hutchins only engaged

tends to suggest that defendant rejected the government's proposed cooperation agreement. According to the government, a cooperation agreement was prepared, but defendant refused to give his assent. (Doc. 116, p. 2). In corroboration of this assertion, Dutko recalled at the sentencing hearing that "Mr. Hutchins did not sign the plea and cooperation agreement." (Doc. 132, p. 14). Conversely, defendant claims he "did not refuse to sign a cooperation agreement," but offers nothing to support this bald assertion. (Doc. 150, p. 2). In the post-conviction forum, defendant assumes the burden to support his contentions with credible evidence of record, *see Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'" (*quoting United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))), the presumption is that counsel rendered reasonably competent assistance, *see Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) ("There is a strong presumption that counsel's conduct falls within the 'wide range of reasonable professional assistance.'" (*quoting Waters v. Thomas*, 46 F.3d 1506, 1511-12 (11th Cir. 1995) (en banc))), *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) ("[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."), and the conflict between such competing claims as are before the court here is resolved in favor of the non-moving party, *see Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("Where . . . the evidence does not clearly explain what happened, or more accurately why something failed to happen, the party with the burden loses."), *Chandler v. United States*, 218 F.3d 1305, 1315 n.15 (11th Cir. 2000) (en banc) ("An ambiguous or silent record is not sufficient to disprove the strong and

___

in a RULE 11 proffer interview.

continuing presumption [of effective representation].”), *Williams v. Head*, 185 F.3d 1223, 1227-28 (11th Cir. 1999) (noting that “‘counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,’” particularly “where the record is incomplete or unclear about [counsel’s] actions” (*quoting Strickland v. Washington*, 466 U.S. 668, 690 (1984))).  In sum, the record does not permit the inference that counsel’s conduct deprived Hutchins of a plea and cooperation agreement in his case.[6]

Presumption aside, defendant assumes the additional burden of showing prejudice under the *Strickland* criteria.  To that end, defendant argues that “if Mr. Dutko had provided the substantial information in my possession to the government with a substantial cooperation agreement and if the government had then still refused to move for a sentence reduction, I could have asked the court to force the government to honor the cooperation agreement.”  (Doc. 150, p. 3).  Contrary to Hutchins’s assertion, federal courts do not have authority to review a prosecutor’s decision to withhold a substantial assistance motion, unless such motion was withheld on unconstitutional grounds.  Noting the discretion to which such decisions are committed, this circuit’s court of appeals, with few exceptions, has declined to intrude upon the traditional province of the prosecuting authority:

> The district court . . . [does] not evaluate the assistance rendered by a defendant offering cooperation as a term of his plea agreement unless and until the government makes a 5K1.1 motion for downward

---

[6] If, in fact, as Hutchins now maintains, he did not have occasion to conclude a plea and cooperation agreement, it stands to reason that defendant, who was present at his sentencing hearing, would have contested his attorney’s unambiguous assertion that “Mr. Hutchins did not sign *the* plea and cooperation agreement.”  (Doc. 132, p. 14) (emphasis added).  That defendant did not do so is probative of the government’s contention that an agreement was prepared, but simply rejected by Hutchins.

departure based on substantial assistance.  Thus, the courts are precluded from intruding into prosecutorial discretion.  In contrast judicial review *is* appropriate when there is an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.

*United States v. Forney*, 9 F.3d 1492, 1501-02 (11th Cir. 1993) (emphasis in original) (internal citations omitted).  Here, defendant does not allege that a substantial assistance motion was withheld on constitutionally impermissible grounds, acknowledging instead that the prosecutor declined to file such a motion in light of what the government perceived to be less-than complete and truthful cooperation.  In other words, the prosecutor still would have had all but plenary discretion to determine defendant's entitlement to a substantial assistance motion, notwithstanding an operable plea and cooperation agreement.  Speaking to that very question at sentencing, the prosecutor indicated that the quality of Hutchins's cooperation, suffering as it did from doubts regarding the credibility and thoroughness of information he divulged during the proffer interview, did not justify a substantial assistance motion.  (Doc. 132, p. 45).  Defendant's theory of prejudice, premised on the faulty assumption that a formal cooperation agreement, standing alone, could have somehow compelled the government to file a substantial assistance motion, is therefore unpersuasive.  Unable to establish a probability that counsel's alleged error altered the outcome of the sentencing proceeding, defendant cannot prevail on this claim of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("[D]efendant must show . . . a reasonable probability that, but for counsel's [claimed] unprofessional errors, the result of the proceeding would have been different.").

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing

upon defendant's motion to vacate sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief.  *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.").  Here, defendant's claims are without merit or otherwise refuted by the record.  This court may therefore deny the requested relief without an evidentiary hearing.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").

Accordingly, it is respectfully RECOMMENDED:

That the motion to vacate, set aside, or correct sentence (doc. 135) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 21st day of August, 2012.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).